UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| ELIZABETH CURTSINGER,<br>    **Plaintiff,**<br><br>v.<br><br>COMMISSIONER OF SSA,<br>    **Defendant.** | CASE NO. 5:23-CV-113-KKC<br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Elizabeth Curtsinger's motion for summary judgment and Defendant Acting Commissioner of Social Security's motion for summary judgment. (DEs 10, 12.) Curtsinger brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the denial of her claim for disability insurance. The Court, having reviewed the record, will deny Curtsinger's motion for summary judgment and affirm the Commissioner's decision.

**I.    Analysis**

This Court's review of the decision by the Administrative Law Judge ("ALJ") is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (citation and quotation marks omitted). To determine whether a claimant has a compensable disability under the Social Security Act (the "Act"), the ALJ applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps include the following:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* § 404.1520(g)(1).

In denying Curtsinger's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Act. § 404.1520(a); *see, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Curtsinger had not engaged in substantial gainful activity since August 1, 2016, the alleged onset date. (Administrative Record ("AR") at 15-16.)

At step two, the ALJ determined that Curtsinger suffers from the following medically determinable severe impairments: diabetes mellitus; residuals from cervical fusion; thoracic and cervical spondylosis; arthropathic psoriasis; myofascial pain; headaches; morbid obesity; depression; and anxiety. (*Id.* at 16-17.)

At step three, the ALJ found that Curtsinger's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 17-19.)

At step four, the ALJ assessed Curtsinger's residual functioning capacity ("RFC"). (*Id.* at 19-26.) In making this assessment, the ALJ considered all of Curtsinger's symptoms to the extent that they could reasonably be accepted as consistent with objective medical evidence and other evidence. The ALJ further considered and weighed the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520(c). The ALJ concluded that Curtsinger has the RFC to perform "sedentary work" subject to some physical and mental limitations. (*Id.*) As a result, the ALJ found that Curtsinger was unable to perform any of her past relevant work. (*Id.* at 26.)

At step five, the ALJ relied on vocational expert testimony to find that Curtsinger was able to perform other work existing in the national economy. (*Id.* at 27.) The ALJ then concluded that Curtsinger was not disabled under the Act. (*Id.* at 28.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently affirmed the decision. *See* 20 C.F.R. § 422.210(a). Curtsinger therefore exhausted her administrative remedies and filed an appeal in this Court. She filed a motion

3

for summary judgment and, in response, the Commissioner filed her own motion for summary judgment. Accordingly, this case is now ripe for review under 42 U.S.C. § 405(g).

In her motion for summary judgment, Curtsinger argues that the ALJ's decision was not supported by substantial evidence. (DE 8-1 at 8.) She claims that the ALJ did not properly evaluate her symptoms and erred by rejecting the opinions of her treating neurosurgeon, her treating chiropractor, and a consultative psychological evaluator.

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017). The Court must look to the record to determine whether the ALJ's decision is supported by substantial evidence—which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The ALJ's decision must be read holistically. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

For the following reasons, the Court finds Curtsinger's arguments regarding the ALJ's evaluation of her symptoms and other medical opinions unpersuasive.

**A. Symptoms**

Curtsinger argues that the ALJ's evaluation of her symptoms was not supported by substantial evidence. She claims that the ALJ failed to discuss the factors found in 20 C.F.R. § 404.1529 pursuant to SSR 16-3p. (DE 10-1 at 13-14.)

Section 404.1529 states that factors relevant to a claimant's symptoms include: (1) daily activities; (2) location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication; (6) any measures used to relieve pain; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Because

4

symptoms such as pain are subjective and difficult to quantify, symptom-related reports by medical or nonmedical sources must be "reasonably [] accepted as consistent with the objective medical evidence and other evidence." *Id.* § 404.1529(c)(3). The ALJ's determination regarding the claimant's symptoms "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

Curtsinger argues that the ALJ did not seriously consider her reports of pain and symptoms, nor consider the factors described above. (DE 10-1 at 14.) However, the ALJ's opinion does not support this argument. The ALJ concluded that, despite her claims of pain and symptoms, Curtsinger "has a mild limitation." (AR at 18.) While acknowledging some physical limits, the ALJ noted that the claimant "can perform chores, prepare meals, go to doctor's appointments, take medications, shop, drive, and read." (*Id.*) Further, Curtsinger can adequately provide information to her healthcare providers, following instructions regarding treatment, and respond to questions from medical providers. (*Id.*)

In evaluating the intensity, persistence, and limiting effects of the claimant's symptoms, the ALJ ultimately found that Curtsinger's statements were "not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 21.)

The ALJ notes that Curtsinger's cervical spine surgery was "initially effective" until she was involved in a car accident. (*Id.*) She later reported cervical pain to her primary care provider and claimed that she had recently developed arm weakness. (*Id.*) Despite having a full range of motion of the spine and shoulders, her grip was symmetrically diminished. (*Id.*) She then underwent an anterior cervical decompression arthrodesis C4 to C7, which made sensation return to her hands. (*Id.*) Reports indicated that she was doing "remarkably well."

5

(*Id.*) This wellness was maintained until she was involved in another car accident, which led to her reporting increased neck and arm pain again. (*Id.*)

A CT of her cervical spine showed "hardware was in good place" and that there were no acute fractures. (*Id.*) In fact, Curtsinger reported that she was getting better with chiropractic physical therapy. (*Id.*) She later began seeing a provider for psoriatic arthritis with treatment consisting of medication management. (*Id.*)

Following her second car accident, Curtsinger reported left-hand pain but imaging showed no acute fracture or dislocation and no significant degenerative changes. (*Id.* at 22.) Further exams found no decreased range of motion, joint abnormality, weakness, or numbness in the hands. (*Id.*) The ALJ noted that while there were some findings of tenderness in some healthcare visits, these findings were inconsistent with the level of impairment alleged by the claimant. (*Id.*)

Further, the ALJ found that the claimant's assertion of headaches were consistent with her history of neck pain, but the record didn't support her alleged level of severity. (*Id.*) She was able to take ibuprofen to dull the headaches and did not undergo any further specialized treatment. (*Id.* at 21, 22.) She was also able to appear for her healthcare appointments and adequately provide information and answer questions. (*Id.* at 21.) The ALJ also noted that Curtsinger was "well developed and well nourished" according to various ER reports, and that she was in "no acute distress." (*Id.* at 22.) Despite some tenderness, the claimant has normal grip strength bilaterally, no muscle atrophy in the upper extremities, and normal motor strength and tone. (*Id.*)

The ALJ also found that Curtsinger was able to drive herself subject to some limitations and walk "a few times a week in April 2019." (*Id.* at 24.) And as of September 2021, she was "raising a 5- and 6-year-old." (*Id.*)

Ultimately, the ALJ adequately considered the factors laid out in 20 CFR § 404.1529 and found that the intensity of her symptoms were not consistent with what she asserted in her claim. While there are certainly factors that weigh in Curtsinger's favor, such as the need for assistance in some of her daily activities (*Id.*), the Court finds that the ALJ's determination regarding the intensity and persistence of the claimant's pain and symptoms is supported by substantial evidence.

### B.  Medical Opinions

Curtsinger also argues that the ALJ improperly evaluated the medical opinions of her treating neurosurgeon (Dr. John Gilbert), her treating chiropractor (Dr. Turner), and a consultative psychological evaluator (Dr. Fishkoff). She claims that the ALJ "did not consider the consistency between those medical opinions" when making a less restrictive RFC finding. (DE 10-1 at 15.) The Court finds her argument unpersuasive for the reasons below.

First, Dr. Gilbert's statement found that Curtsinger can perform "no activities other than occasionally lift/carry up to 10 pounds." (AR at 25.) In a checklist styled form, he indicated that Curtsinger can sit, stand, walk for less than an hour, but cannot use her hands for repetitive activity or use her feet for repetitive movements such as operating foot controls. (*Id.*) Yet the ALJ found Dr. Gilbert's statement unpersuasive because he used a checklist styled form and "merely cite[d] that her pain and medications interfere with concentration and function" rather than provide objective findings as support. (AR at 25.)

The Sixth Circuit has previously characterized medical opinions "expressed in a check-box form, without any further explanation to support the treating physician's conclusions, as weak evidence and have concluded that such an opinion meets the patently deficient standard." *Pruitt v. Comm'r of Soc. Sec.*, 2022 WL 4517094, *4 (6th Cir. 2022) (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016)) (quotation marks omitted). Here, the ALJ appropriately found Dr. Gilbert's medical opinion was unpersuasive

7

because of the checklist format, inconsistency with prior medical evidence, and a lack of objective medical evidence to support the checklist format.

Second, Dr. Turner's statement found that Curtsinger was subject to "extreme limitations" that the ALJ found was "not well supported by the findings cited within the statement." (AR at 25.) Instead, the ALJ notes that Dr. Turner's cited signs and symptoms support reasonable limitations and that Dr. Turner's findings of abnormal posture, positive straight leg raise, muscle weakness, and decreased range of motion are not generally observed by medical providers—which was detailed at length in the ALJ's opinion. (*Id.*) The ALJ already noted that Curtsinger had been able to dull some pain with ibuprofen and, despite some tenderness, she maintained a normal grip strength bilaterally, no muscle atrophy in the upper extremities, and normal motor strength and tone. (*Id.* at 22.) It was reasonable for the ALJ to find that Dr. Turner's extreme limitations were not wholly consistent with the rest of the medical evidence.

Third, Dr. Fishkoff's statement found that Curtsinger suffered from various mental impairments that would make it difficult for her to maintain employment. (*Id.* at 24.) The ALJ explains that Dr. Fishkoff's findings are not well supported by "the corresponding consultative psychological exam findings." (*Id.*) Those findings found some abnormalities, but ultimately did not support listing level impairment. (*Id.*) Further, the ALJ notes that Dr. Fishkoff's statement "relies heavily on the claimant's subjective reports as opposed to objective findings" and is not consistent with other evidence of record. (*Id.*) The ALJ explains that Curtsinger has undergone "no sustained formal mental health treatment such as counseling, therapy, or inpatient care" and that other mental status exams have "essentially been normal" and do not support the level of limitation in Dr. Fishkoff's statement. The Court finds that the ALJ reasonably found this statement to be unpersuasive.

8

Curtsinger argues that the consistency between these medical opinions support a more restrictive RFC finding. And while there is some consistency between these opinions, the ALJ was able to explain why each opinion conflicted with prior medical evidence and/or was otherwise unpersuasive. Here, the Court finds that the ALJ's determination that these medical opinions were unpersuasive is supported by substantial evidence.

**II.  Conclusion**

For the above reasons, the Court **HEREBY ORDERS** that:

1.  The plaintiff's motion for summary judgment (DE 10) is DENIED;

2.  The defendant's motion for summary judgment (DE 12) is GRANTED;

3.  The decision of the Commissioner is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g), in that it was supported by substantial evidence; and

4.  A judgment will be entered contemporaneously with this order.

This 25th day of July, 2024.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY